UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW HECHT and ANDREA HECHT, <br><br> Plaintiffs, <br><br> v. <br><br> THE CIGNA GROUP, <br><br> Defendant. | No. 24 CV 5926 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiffs Andrew and Andrea Hecht took their son to Edward-Elmhurst Hospital for emergency treatment. While there, Andrew also received treatment for a sprained ankle. Defendant Cigna administered the Hechts' insurance plan. Cigna processed the Hechts' medical claims as in-network and determined that the Hechts owed 20% of the covered expenses in co-insurance. Later, the hospital sent the Hechts bills for the costs not covered by Cigna, claiming that it was out-of-network. The Hechts called Cigna multiple times and were reassured that the hospital was an in-network provider. The hospital continued to say it was out-of-network and sent the balance bills to collections. After two years of calling Cigna and the hospital, Cigna told the Hechts that it would investigate the network dispute, file a complaint with the hospital, and get the bills out of collections. The Hechts never heard back. The Hechts bring claims under Employee Retirement Income Security Act § 502(a)(1)(B) for benefits due and § 502(a)(3) for breach of fiduciary duty. Cigna moves to dismiss.

I. **Legal Standard**

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

II. **Facts**

In September 2021, plaintiffs Andrew and Andrea Hecht took their son to Edward-Elmhurst Hospital due to severe hip pain. [1] ¶ 22.[1] Their son was admitted, and Andrew received an x-ray and treatment for an unrelated injury. [1] ¶¶ 23–24.

The Hechts were insured by defendant The Cigna Group's LocalPlus Medical Benefits Health Savings Account Consumer Driven Plan through Andrew's employer. [1] ¶ 18. Under the Plan, in-network emergency services were covered at 80%, with the Hechts responsible for 20% in co-insurance. [1-1] at 21. Out-of-network emergency services were covered at the in-network cost sharing level. [1-1] at 15; [1-1] at 21. The Plan would pay 80% of an allowable amount, determined by Cigna with the out-of-network provider or by Cigna alone. [1-1] at 15. The Hechts were responsible for 20% co-insurance, as well as any charges made above the allowable amount. [1-1] at 15. If an out-of-network provider billed members for amount higher

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are taken from plaintiffs' complaint. [1].

than the amount they owed as indicated on their Explanation of Benefits, the Plan directed them to contact Cigna customer service. *Id.*

In October 2021, the Hechts received bills from the hospital for all charges not covered by Cigna. [1] ¶ 27. These statements indicated that the hospital was an out-of-network provider. *Id.* But Cigna's EOBs for the visits listed the hospital's "provider network status" as "in network." *Id.*; [1-2] at 2; [1-3] at 2. The EOBs explained that because the hospital was in-network, Cigna negotiated a discount on the charges. [1-2] at 2; [1-3] at 2. The EOBs said that by "using CIGNA's Open Access Plus Network[,] [t]he discount shown is how much you saved. You don't need to pay that amount. If you already paid your health care professional more than the 'What I Owe' amount, please ask for a refund." [1-2] at 4; [1-3] at 5. The EOBs also warned "Health Care Professionals" that their "CIGNA Agreement does not allow [them] to bill the patient for the difference." *Id.*

The Hechts called Cigna, which confirmed that the hospital was in network and that the Hechts only owed the co-insurance balances reflected on the EOBs. [1] ¶¶ 28–29. Cigna's agent initiated a three-way conference call with a hospital representative and the Hechts. [1] ¶ 29. The Cigna agent told the hospital that it was in-network and the out-of-network charges on the billing statements were incorrect. *Id.*

When the hospital bill did not change, Andrew went to the hospital to speak with someone in the billing department. [1] ¶ 30. No billing personnel were on site,

3

so Andrew tried the hospital's corporate head office, where he was told there was no one to speak with and was escorted out of the building. *Id.*

Fearing that the hospital would send the accounts to collections, the Hechts paid the amounts owed according to the EOBs. [1] ¶¶ 31–32. The disputed portion of the bills remained unresolved, and the hospital continued to send bills. [1] ¶ 33. For months, Andrew made calls to both the hospital and Cigna, including several three-way conference calls. [1] ¶ 35. Cigna's representatives maintained that the services were in-network, while the hospital continued to say it was out-of-network. *Id.*

Around May 2022, the hospital sent the accounts to a collection agency. [1] ¶ 34. In September 2022, Andrew called the collection agency to inform them that the debts were invalid. [1] ¶ 34. That same month, the hospital told Andrew that it sent the outstanding accounts to its "external claim pricing team." [1] ¶ 36. In February 2023, the collection agency closed the Hechts' accounts and sent the debts back to the hospital. [1] ¶ 37. The hospital sent the debts to a new collection agency in April 2023. *Id.* By December 2023, the Hechts' credit scores had dropped significantly. *Id.*

Andrew had another three-way conference call with hospital and Cigna representatives. [1] ¶ 38. The hospital agent told Andrew that an account review determined that the services were out-of-network and gave Andrew the name of the hospital billing supervisor. *Id.* Andrew contacted the billing supervisor in December 2023 and January 2024. [1] ¶ 39. In mid-January 2024, the hospital billing supervisor responded that the services were out-of-network and nothing could be done. [1] ¶ 41.

4

During this time, Cigna told Andrew that the issue would be escalated to its Provider Support Investigations Unit, and that Cigna would file a complaint with the hospital to rectify the incorrect network status and get the accounts out of collections. [1] ¶ 39. The agent told Andrew that the hospital had been in-network since 2003, and that Cigna would convey all the information needed to demonstrate that the services should have been billed as in-network. *Id.* Andrew was told that the investigation would take at least 30 days, plus an additional 15 days to get the accounts out of collection. [1] ¶ 40. Cigna never followed up with the Hechts. [1] ¶ 42.

The Hechts filed this lawsuit under ERISA § 502(a)(1)(B) and § 502(a)(3), seeking benefits due to them and maintaining that Cigna, as plan administrator, breached its fiduciary duties in handling the network dispute. Cigna moves to dismiss the Hechts' claims. [15].

### III. Analysis

#### A. ERISA § 502(a)(1)(B)

ERISA § 502(a)(1)(B) authorizes plan beneficiaries to bring civil actions "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A plaintiff bringing a claim under this provision "is essentially asserting his contractual rights under an employee benefit plan," and such claims "are creatures of contract law." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir. 1992); *see also Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013) (ERISA § 502(a)(1)(B) provides "a contract remedy under the terms of the plan.").

Cigna moves to dismiss the Hechts' § 502(a)(1)(B) claim, arguing that they have failed to tie their claim to a violation of any specific Plan terms. [16] at 11–12. The Hechts argue that while they did not point to a specific plan provision in their complaint, they attached the Plan document and that attachment suffices to preserve their claim against a motion to dismiss. [25] at 6–7.

Documents attached to a complaint "become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). I consider the attached Plan along with the complaint to determine whether the Hechts stated a claim under their legal theory. *See Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 544 (7th Cir. 2022) (holding that "a complaint need not cite a specific provision of a plan to state an ERISA claim" but still must plead facts plausibly showing the breach of contract).

The Hechts raise multiple theories of how Cigna breached the Plan's term, generally falling into two categories. First, Cigna allegedly failed to properly determine and pay benefits on behalf of the Hechts. [1] ¶¶ 65–66. Second, Cigna did not resolve the network dispute with the hospital and did not "provide a 'full and fair review'" to resolve the discrepancies. *Id.*

               1.     *Benefits Due*

Cigna did not deny the Hechts any benefits due to them under the Plan. Indeed, the Hechts admit in their response to Cigna's motion to dismiss that "there has been no denial of benefits" here. [25] at 10. The Plan terms are clear. Cigna was

6

obligated to pay 80% of the covered expenses to the hospital. [1-1] at 21. Cigna correctly determined and paid this share. [1-2] at 4; [1-3] at 3. The Hechts do not allege any facts to support this determination was made without valid data or in an arbitrary manner. The Hechts claim that Cigna failed to make payments of Plan benefits, by not "cover[ing] the cost of services received from a provider represented as in-network that disputed its network status," leaving the Hechts to pick up the remainder. [1] ¶¶ 65–66. But no Plan provision requires Cigna to pay an erroneous balance bill sent by an in-network provider.

While the complaint alleges that the hospital was an in-network provider, the Hechts also claim that Cigna failed to accurately communicate the hospital's network status, suggesting that the hospital was indeed out-of-network. [1] ¶ 66. The Hechts do not point to any Plan provision that Cigna breached when it allegedly provided incorrect status information about the hospital. Further, even if the hospital were an out-of-network provider and Cigna made a mistake when determining benefits, there was no breach of the Plan's terms. Out-of-network emergency services are covered at the in-network cost sharing level. [1-1] at 15; [1-1] at 21. The Plan requires Cigna to cover 80% of an allowable amount for emergency expenses provided by out-of-network providers. [1-1] at 15. Members are responsible for any charges beyond the allowable amount and out-of-network providers may balance bill members for that remainder. *Id.* The benefits due to the Hechts—Cigna paying 80% of the emergency services (up to the covered or allowable amount)—are the same regardless of whether the hospital was in-network or out-of-network. *See id.*

The Hechts do not plausibly state a claim that Cigna withheld benefits due to them under the Plan.

### 2. Network dispute

The Hechts claim that Cigna breached the Plan terms by failing to resolve the network dispute, leading to the Hechts paying more than 20% of the contracted amount. [1] ¶¶ 65–66. They argue that they should have only been charged 20% coinsurance of the covered expenses, and that Cigna breached this term by allowing the hospital to balance bill the Hechts. [25] at 7–8. But Cigna adjudicated the Hechts' benefits correctly, in accordance with the Plan terms. It is the hospital, not Cigna, that is charging the Hechts more than 20% of the covered expenses.

The Hechts argue that "Cigna is obligated to ensure that its coverage determinations and computation of benefit payments are accurate. If any discrepancy should arise, it is the responsibility of Cigna, not the Plan beneficiaries, to arbitrate and determine where any errors may have occurred." [25] at 8 n.3; [1] ¶ 49. To support this claim, the Hechts point to a section of the Plan that explains "ERISA imposes duties upon the people responsible for the operation of the employee benefit plan. The people who operate your plan, called 'fiduciaries' of the Plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries." [1-1] at 69; [25] at 8 n.3. This clause explains Cigna's fiduciary duties under ERISA but does not create a contractual obligation to persuade the hospital that Cigna correctly calculated benefits or determined coverage.

The Hechts also say that they were denied a "full and fair review in order to resolve the discrepancies between [Cigna's] determinations and the [hospital's]

8

determinations." [1] ¶ 65. Yet they offer no Plan provision that gives them this right—the Plan only provides that Cigna has the "discretionary authority to perform a full and fair review, as required by ERISA, of each *claim denial* which has been appealed by the claimant." [1-1] at 68 (emphasis added).

The Hechts do not point to any Plan terms that Cigna breached when it failed to resolve the network dispute with the hospital and did not prevent the hospital from balance billing the Hechts. The Hechts' ERISA § 502(a)(1)(B) claims are dismissed without prejudice.[2]

### B. ERISA § 502(a)(3)

ERISA § 502(a)(3) permits civil actions to be brought "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Hechts claim that Cigna failed to fulfill its fiduciary duties under ERISA § 404(a)(1)(D), which required Cigna to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); [1] ¶ 74.

To state a claim for breach of fiduciary duty, a plaintiff must allege that the defendant is a plan fiduciary, the defendant breached its duty, and that the breach

---

[2] First dismissals are typically granted without prejudice. *See Ryder v. Hyles*, 27 F.4th 1253, 1258 (7th Cir. 2022) (citing *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015)).

9

resulted in harm to the plaintiff. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). A plaintiff need not "describe directly the ways in which [a defendant] breached their fiduciary duties; rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior." *Id.* Because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences[,]" a plaintiff "does not need to plead details to which she has no access, [if] the facts alleged tell a plausible story." *Id.*

Cigna does not challenge that it was a plan fiduciary, nor the sufficiency of the Hechts' allegations of harm. Cigna characterizes the Hechts' alleged breach as "[a]t most, . . . a miscommunication to Plaintiffs about the Hospital's network status by Cigna, which resulted in Plaintiffs not paying their balance bills from the Hospital." [16] at 16. Cigna argues that the Hechts' claim fails because a fiduciary breach claim premised on a Plan representative's misstatement requires an intent to deceive, which the Hechts do not allege. [16] at 16–17. Cigna is correct that "mistakes in the advice given to an insured which are attributable to the negligence of the individual supplying that advice are not actionable as a breach of fiduciary duty." *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 873 (7th Cir. 2013).

But miscommunication is not the basis for the Hechts' breach of fiduciary duty claim. While the Hechts mention potential miscommunication in the complaint's facts and their § 502(a)(1)(B) claim, their claim for fiduciary breach alleges that Cigna "violated its fiduciary duties of care and loyalty by . . . failing to resolve network disputes between [Cigna] and [the hospital], shifting the costs of services to plan

10

participants in favor of [Cigna's] own interests rather than the interests of the plan beneficiaries." [1] ¶ 73. Cigna elides the Hechts' claim that Cigna shifted costs to them as conclusory and does not address the claim that Cigna breached its duties when it failed to resolve the network dispute. *See* [16] at 16–17; [33] at 11–12.

The Plan is clear that in-network providers have contracted with Cigna and agreed to accept a negotiated, discounted price, ensuring members get a better deal on their healthcare costs. [1-1] at 77 ("Participating Providers" are "person[s] or entit[ies] that ha[ve] a direct or indirect contractual arrangement with Cigna to provide covered services and/or supplies, the Charges for which are Covered Expenses."); [1-1] at 82 ("Your costs are lower for services from Cigna contracted health care professionals and facilities because they have agreed to accept discounted payments to help you make the most of your health care dollars."); [1-1] at 84 ("If you choose to see a Cigna participating health care professional, the cost is based on discounted rates, so your costs will be lower.").

Cigna's EOBs reiterated that Cigna contracted with in-network providers and negotiated discounts to lower rates and save members money. [1-2] at 2 ("CIGNA negotiates discounts with health care professionals and facilities to help you save money."); [1-3] at 2 (same); [1-2] at 3 (defining "In-Network" as a "group of health care providers that have a contract with Cigna to provide you with health care coverage. Using in-network providers will save you money."); [1-3] at 3 (same).The EOBs explained that members were not responsible for the discounted amount. [1-2] at 4;

11

[1-3] at 5. And they warned in-network providers that their "CIGNA Agreement does not allow [them] to bill the patient for the difference." *Id.*

When seeing an in-network provider for emergency services, the Hechts should have only been responsible for 20% co-insurance of the negotiated, discounted amount. [1-1] at 21. If the hospital was an in-network provider, as the Hechts allege and Cigna maintained, it should not have been able to charge the Hechts for any remaining balance under the Plan.

Cigna was on notice, for over two years, that one of its in-network providers was balance billing its member, in violation of its contract with Cigna to accept the discounted payment. *See* [1] ¶ 28 (the Hechts first called Cigna about the network dispute in October 2021). Yet Cigna did not resolve the dispute or enforce its contract with the hospital—negotiated for the advantage of its beneficiaries—leaving the Hechts with erroneous balance bills that are still in collections.

While the complaint lacks concrete details of how Cigna's investigation (or lack thereof) into the network dispute breached its fiduciaries duties, the Hechts are not privy to this information, arguably in part because Cigna stopped communicating with them. *See Allen*, 835 F.3d at 678 (recognizing ERISA plaintiffs often lack "the inside information necessary to make out their claims in detail" until discovery). Taking their allegations as true, the Hechts have alleged a "plausible story" that Cigna did not operate the Plan prudently and in the interest of its members when it did not resolve the network dispute, either by correcting its own erroneous benefits determination or by using its leverage over an in-network provider to correct the

12

provider's error, to the detriment of the members. *See* [1] ¶ 73 (Cigna "violated its fiduciary duties of care and loyalty by . . . failing to resolve network disputes between [Cigna] and providers."); ¶ 49 (As the Plan administrator, Cigna is obligated to ensure that its coverage determinations and computation of benefit payments are accurate. If any discrepancy should arise, it is the responsibility of Cigna, not the Plan beneficiaries, to arbitrate and determine where any errors have occurred.").

Cigna's motion to dismiss the ERISA § 502(a)(3) claim is denied.[3]

### C. Exhaustion of Administrative Remedies

Although ERISA's text is silent on the issue, courts interpret the statute to require exhaustion of administrative remedies as a prerequisite to bringing a suit. *Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 348 (7th Cir. 2019); *see also Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 650 (7th Cir. 1996) (holding exhaustion requirement is applicable to all ERISA claims, not just claims for benefits). A plaintiff's failure to exhaust administrative remedies is an affirmative defense that they need not anticipate in their complaint, but dismissal is appropriate when a plaintiff pleads themselves out of court "by alleging facts that are sufficient to establish the defense." *See Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006); *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 729–30 (7th Cir. 2007).

Courts generally excuse a plaintiff's failure to exhaust "when resort to administrative remedies would be futile, when the remedy provided is inadequate, or

---

[3] Because the Hechts' § 502(a)(1)(B) claim is dismissed, I do not address Cigna's argument that their § 502(a)(3) claim is duplicative.

where there is a lack of access to meaningful review procedures." *Orr v. Assurant Emp. Benefits*, 786 F.3d 596, 602 (7th Cir. 2015) (internal citations omitted).

The Hechts admit that they did not file any appeals or follow the Plan's appeal procedure for adverse benefits determinations. [1] ¶ 49. They argue that the available administrative remedies were inapplicable to their situation, so they did not have meaningful access to effective review procedures for their issue and using the available procedures meant for other disputes would have been futile. [1] ¶ 49; [25] at 8–11.

Despite their admission, the Hechts have not pled themselves out of court. The Plan's prescribed appeal procedure is designed to review Cigna's adjudication of a claim, *i.e.*, appealing an adverse determination or denial of benefits. [1-1] at 64. An adverse benefit determination is a "denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-1(m)(4)(i). There was no denial of payments here. Cigna correctly determined that the Hechts were entitled to in-network coverage for the emergency services provided at an in-network hospital and paid its contractual share. Cigna argues that the Hechts "should have appealed that Cigna incorrectly determined that the provider was in-network when it was out-of-network and Plaintiffs were being balance-billed." [33] at 9. Such an appeal would have been futile—the Hechts agreed with Cigna's determination that the hospital was in-network. [1] ¶ 49; [25] at 10.

The Plan limits the available administrative process to appealing adverse benefit determinations, which suggests the Hechts did not have access to a

14

meaningful appeal process for their issue.[4] [1-1] at 64; s*ee, e.g., Baird v. Steel Dynamics, Inc.*, No. 23-cv-00356, 2024 WL 3983741, at *3 (N.D. Ind. Aug. 29, 2024) (excusing plaintiff's failure to exhaust because the Plan language limited the administrative review process to "'claims for benefits,' which d[id] not include breach of fiduciary duty claims."). The Hechts followed the closest procedure in the Plan for their issue: "If the Out-of-Network provider bills you for an amount higher than the amount you owe as indicated on the Explanation of Benefits (EOB), contact Cigna Customer Service at the phone number on your ID card." [1-1] at 15. Upon following this advice, no customer service representative directed the Hechts to file a benefits determination appeal to address the dispute. [1] ¶ 50. Instead, Cigna's representatives called the hospital and ultimately said they would escalate the issue to Cigna's Provider Support Investigations Unit and file a complaint with the hospital. [1] ¶ 39.

Based on the allegations and plan, the Hechts' complaint does not establish the affirmative defense. Cigna's motion to dismiss is denied.

### D. Leave to amend

Cigna argues that the correct defendant in this case should be the plan administrator, Cigna Health and Life Insurance Company. [16] at 19. The Hechts

---

[4] Cigna argues that the Plan provides for an appeals process when a member is unsatisfied with how customer service representatives handled their inquiry. [33] at 9–10. But the Plan says that, after speaking to customer service, "If you are not satisfied with the results of *a coverage decision*, you may start the appeals procedure." [1-1] at 64 (emphasis added). Once again, the appeals procedure is limited to challenging adverse benefits determinations, not other disputes. Here, the Hechts were satisfied with Cigna's coverage decision; their problem was with Cigna's failure to enforce its decision. The Plan does not describe an appeal procedure for that scenario.

15

request leave to amend should they determine that they named the wrong entity. [25] at 14. Cigna does not oppose this request, [33] at 13, and therefore it is granted. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.").

### IV. Conclusion

Defendant's motion to dismiss, [15], is granted as to plaintiffs' ERISA § 502(a)(1)(B) claim but denied as to plaintiffs' ERISA § 502(a)(3) claim. Plaintiffs may file an amended complaint correcting defendant's name by March 6, 2025. The parties shall file a joint status report proposing the remainder of the case schedule, including proposed deadlines for requesting substantive amendment of the pleadings, by March 13, 2025.

ENTER:

                                            Manish S. Shah
                                            United States District Judge

Date: February 27, 2025